(51 Misc. Rep. 184.)

### LAWTON v. CITY OF NEW ROCHELLE.

(Supreme Court, Special Term, Westchester County. June, 1906.)

1. MUNICIPAL CORPORATIONS—CHANGE OF GRADE—DAMAGES.

     Laws 1883, p. 100, c. 113, as amended by Laws 1884, p. 342, c. 281, gave an abutter on a village street a right to compensation for a change of grade, which right cannot be destroyed by the repeal of the statute as to one whose rights accrued under a contract in a conveyance by him of his property to the village for a public street while such statute was in force.

     [Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 916.]

2. SAME.

     An owner of land abutting on a city street, with other abutting owners, conveyed to the village, before its incorporation as such city, the fee of the street. Thereafter a change of grade was made thereon. Under Laws 1899, p. 152, c. 128, incorporating the city, it was provided that all the

obligations, liabilities, and duties of the village should be transferred to the city, and that the rights of persons under contracts on the part of the city should remain the same as they would have done under the village charter. *Held*, that such abutting owner may, under Laws 1883, p. 100, c. 113, as amended by Laws 1884, p. 342, c. 281, have such damages ascertained and determined, though the statute was repealed before the city was incorporated as a village by General Village Law, Laws 1897, p. 366, c. 414, which also provided for damages to abutting owners, and though the charter of the city did not authorize a claim for damages by change of the grade of a city street.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 45, 46.]

Claim of J. Warren Lawton against the city of New Rochelle for damages for change of grade. Judgment for petitioner.

John Cummins, for petitioner.
Wm. D. Sawyer, for respondent.

BURR, J. The petitioner asks for the appointment of commissioners to determine the damages to which he is entitled by reason of a change in the grade of Center avenue, a street in the former village and present city of New Rochelle. At common law no right to such damages existed. Radcliff v. Mayor, 4 N. Y. 195, 53 Am. Dec. 357; Heiser v. Mayor, 104 N. Y. 68, 9 N. E. 866; Torge v. Village of Salamanca, 176 N. Y. 324, 327, 68 N. E. 626.

In 1883 the Legislature of the state of New York, by an act passed in that year (Laws 1883, p. 100, c. 113) and amended in the succeeding year (Laws 1884, p. 342, c. 281), provided, among other things, that "whenever the grade of any street, highway or bridge in any incorporated village in this state shall be changed or altered so as to interfere in any manner with any building or buildings situate thereon, or adjacent thereto, or the use thereof, or shall injure or damage the real property adjoining such highway so changed or altered, the owner or owners of such building or real estate may apply to the Supreme Court" for the appointment of commissioners to ascertain and determine the amount of damage sustained thereby. Such being the state of the law, in 1887 the petitioner, with other tenants in common of the property, conveyed to the village of New Rochelle a strip of land designated on a map annexed to the deed as Center avenue, "to be used, enjoyed, and maintained as a public road, avenue, and street." This conveyance was accepted by the village. The strip of land referred to as Center avenue was intersected by another strip of land, which in 1847 had been conveyed to the New Haven Railroad Company by Maria Lawton, the former owner of the property, upon which the successor to the said company was then operating a steam railroad.

No change was made in the statute, except in a particular unimportant as far as this case is concerned (Laws 1894, p. 330, c. 172), until 1897, when a general village law was enacted. This law expressly repealed the act of 1883 and the acts amendatory thereof, as far as they relate to the change of grade of streets by village authorities (Laws 1897, p. 456, c. 414, § 342, subd. 4), although, if the grade of a street within an incorporated village was changed by any other lawful authority, the act of 1883 was deemed still in force. Torge v. Village of

Salamanca, supra. The village act contained similar provisions to the act of 1883 with reference to the liability of a village for a change of grade of a street within the corporate limits. Laws 1897, p. 420, c. 414, § 159. In 1899 the city of New Rochelle was incorporated. Laws 1899, p. 152, c. 128. By the same act it was provided that on the fourth Tuesday of April, 1899, the corporation known as the "Village of New Rochelle" should be dissolved. Id. § 254. After that date, therefore, Center avenue ceased to be a street in an incorporated village. The charter of the new city contained no provision which in express terms authorized a claim for damages by reason of a subsequent change of the grade of a city street.

The first question to be considered is whether during the life of the village of New Rochelle there was any change or alteration in the grade of Center avenue. To sustain a claim for damages by reason of such change, I think it is necessary that the change should have been lawful in its character, and also should have been consummated. Whitmore v. Village of Tarrytown, 137 N. Y. 409, 33 N. E. 489; Torge v. Village of Salamanca, 176 N. Y. 329, 68 N. E. 626; Phipps v. Village of North Pelham, 61 App. Div. 442, 70 N. Y. Supp. 630. I think that the evidence fails to establish that such change was made. In the year succeeding the conveyance, and in October, 1888, the railroad company began the erection of piers or abutments entirely upon their own land and nearly at right angles with the line of the street. Upon these a bridge was subsequently constructed at a height of 14 or 15 feet above the level of the tracks. This seems to have been in response to a notice to the railroad company from the village authorities to carry the street across the tracks. In 1894 steps were erected by means of which pedestrians could pass from the surface of the street to the bridge for the purpose of passing over the same to the other side of the track. After the incorporation of the city these steps were removed. There seems, also, to have been an agreement, entered into between the village authorities and the railroad company in 1892, which, among other things, contemplated the establishment of the grade of Center avenue, where it crossed the railroad, at the level of the top of the bridge abutments above referred to. This agreement was ultra vires, and was so declared in an action brought for the enforcement thereof. N. Y., N. H. & H. R. R. Co. v. Village of New Rochelle, 29 Misc. Rep. 195, 60 N. Y. Supp. 904. This is all that occurred prior to 1904, when an actual physical change of grade of the street was made under the apparent authority of the city of New Rochelle. If, therefore, the right of the petitioner is dependent upon the fact that an actual change of grade was made while Center avenue was a street in an incorporated village, he must fail.

But the petitioner claims that as, at the time he conveyed the land in the street to the village, statutes then in existence gave to an abutting property owner the right to compensation if an existing grade was changed, such right became a part of his contract with the village; that it was a property right, was vested, and therefore immune from subsequent legislative attack. Muhlker v. N. Y., N. H. & H. R. R. Co., 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872. The Supreme

Court of the United States in that case held that, as the highest court of this state had decided that an owner of property abutting upon a street in the city of New York had an easement of light, air, and access to such property to which the land in the street was servient, these decisions constituted a rule of property; and, as these decisions were in force when the plaintiff acquired his title, he was assured thereby "that his easements of light and air were secured to him by contract, as expressed in those cases, and could not be taken from him without compensation." I fail to see why, inasmuch as the statute law of the state provided, at the date of the conveyance by the petitioner of the land in question, that, if a subsequent change was made in the grade of the street, he, if then an abutting property owner, should recover damages therefor, this did not form a part of the contract of conveyance between him and the village. That this right was in the nature a property right seems to me clear on principle and authority. Torge v. Village of Salamanca, supra. In that case the court said:

"The right secured to an abutter to compensation for a change in the grade of a street is substantially the right to him of an easement in the street to have it maintained at its existing grade, and any such easement created by the statute is in every respect analogous to those invaded in the elevated railroad cases."

If this right is in the nature of an easement, it certainly is a property right, and the repeal of the statute could not destroy that right as to one whose rights accrued by virtue of a contract between him and the municipality while the statute was in force.

The defendant has cited the case of Smith v. Village of White Plains, 67 Hun, 81, 22 N. Y. Supp. 450, as contrary to the view above expressed and decisive thereof. An examination if that case, however, fails to show that the petitioner there acquired any right as an abutting property owner prior to the date of the repeal of the statute giving a right to damages to such owner for a change of grade. If such, however, were the case, it seems to me that the later decision is controlling, not only because it is the decision of a higher court, but because subsequent in point of time and marking progress and development in the law relating to the subject.

Inasmuch, therefore, as the petitioner has shown a right to recover damages, the remaining questions to be considered are whether the city of New Rochelle is liable for such damages and whether they may be established in a proceeding of this nature. The act which incorporated the city of New Rochelle and destroyed the corporate life of the village (Laws 1899, p. 259, c. 128, § 254) provided, among other things, that "all duties, contracts, obligations and liabilities imposed upon said village of New Rochelle are hereby transferred to, vested in and imposed upon the city of New Rochelle." Inasmuch as the village of New Rochelle, at the time of its contract with the petitioner by which it acquired the land in Center avenue, was under statutory obligation not to change the grade of the street without compensating him, and was liable if it did so, I think that the language used is sufficiently broad to transfer that obligation and liability upon the city. But in the absence of any statute transferring the liability of the

former village to the new city, if the petitioner had a vested right in an easement to have the street maintained at the grade which existed when the conveyance was made, and that right has been invaded by the city, the petitioner is entitled to a remedy either by action or this proceeding.

With regard to the remedy I have had more doubt than as to the right. It may be that, instead of proceeding under this statute, which in its terms it limited to the case of a change of grade of a street in a village, the right of the abutting property owner must be enforced by action. But the section above referred to also provides that:

"The rights and privileges of all persons or parties that may have arisen or accrued, under, pursuant to or by reason of any such contracts, obligations or liabilities, on the part of said village, shall remain and be the same under this act as they would have been under the charter of and laws relating to said village."

Although the right of the petitioner to pursue this remedy had not accrued, I think it may be said that it had arisen before the village ceased to exist, provided the city, as the successor of the village, changed the grade of the street in question. The general rule also is that, where a right not existing at common law is given by a statute and a remedy for the enforcement of the right prescribed, the right can be enforced only through the statutory remedy. I do not think that the construction of the statute requires me to imperil the right by holding that this particular remedy has been taken away.

Judgment will therefore be directed for the petitioner for the appointment of commissioners.

Judgment for petitioner.