(55 Misc. Rep. 459)

## TRIEST v. CITY OF NEW YORK.

(Supreme Court, Special Term, Richmond County. July 17, 1907.)

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—DAMAGES—CHANGE OF GRADE OF STREETS.

A plaintiff cannot recover damages for a lawful change in the grade of a street, unless such a right is provided for by statute; but he may recover if the change is made illegally.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 925.]

2. SAME—ESTABLISHMENT OF STREET AND GRADE BY USER—SUFFICIENCY OF EVIDENCE.

In an action for damages resulting from a change in the grade of a certain street, evidence considered, and *held* sufficient to show that a certain highway was a village street graded with the surface of the land by user at the time the village was merged into Greater New York.

3. SAME—STATUTES—REPEAL OF VILLAGE LAW BY NEW YORK CITY CHARTER— DAMAGES FOR CHANGE OF GRADE OF STREET.

Laws 1883, p. 100, c. 113, subsequently embodied in Village Law, Laws 1897, p. 420, c. 414, § 159, provides that damage may be recovered for any

change in grade of a village street. New York City Charter, Laws 1897, p. 337, c. 378, § 951, provides that there shall be no liability to abutting owners for changing grades once established by lawful authority, except where changed after buildings have been erected in conformity with former grade; also that all inconsistent laws are repealed. Section 1614 (page 557) provides that no right or remedy of any character shall be lost, impaired or affected by reason of the act, etc. *Held*, that the charter did not repeal the village law, so as to take away the right to damages for a change in grade of a village street, made after the village was merged into Greater New York.

4. SAME—CONSTRUCTION.

New York City Charter, Laws 1897, p. 337, c. 378, § 951, provides that a grade shall be deemed established by lawful authority, within the meaning of the section, when the street has been used by the public as of right for 20 years and been improved by public authorities at the expense of the public or abutting owners; but section 435 (page 154) of the charter provides that the surface grades of streets continuously existing and used for 20 years shall be deemed the grade of those streets. *Held*, that the word "and," in section 951, should be construed "or," so as to permit establishment of a grade by user for 20 years or by improvement, etc.

Action by Hans Triest against the city of New York. Judgment for plaintiff.

Holt & Gaillard, for plaintiff.
William B. Ellison, Corp. Counsel, for defendant.

CRANE, J. Marion avenue, in the borough of Richmond, formerly the village of Edgewater, is claimed by the plaintiff to have been regraded to his damage, and this action is brought to recover therefor, instead of the remedy provided by statute; the city, it is stated, having proceeded illegally.

Mr. Triest is the owner of property fronting on St. Pauls avenue, extending through to Marion avenue and between Cebra and Jackson avenues. His dwelling house, which faces upon St. Pauls avenue, was built long prior to any of the times herein mentioned, while that portion of the property which faces upon Marion avenue has never been built upon; a very small summer house being excepted. Marion avenue appears to have been open land or fields in the rear of the property and dwellings facing on St. Pauls avenue, which was gradually used by wagons until a well-defined roadway had been made. Some dwellings were built facing upon it, with sidewalks and improvements made at certain portions by a few individual owners. The memory of some of the residents in this locality would indicate that this roadway or street had been used more or less for 20 years or more. It was quite steep and hilly, and was developed by use from a back county road into a village street or highway.

There is no evidence that the village of Edgewater ever graded or worked it, or spent any money whatever upon it. Neither is there any evidence that the grade of the street was ever officially established, unless it be that user for 20 years or more in the gradual development into a street establishes a grade in this instance. A map made in 1880 shows Marion avenue for a distance of about 200 feet, and one in 1890 the surface grade and proposed grade of Marion avenue bound-

ed by Cebra and Occident avenues, and there was recognition by the village authorities of Marion avenue as one of its streets and highways when, in April of 1897, the board of trustees of the village consented to the board of supervisors assuming control thereof as a county road.

By Laws 1897, p. 1, c. 378, the borough of Richmond and the village of Edgewater became a part of the territory of the city of New York. In 1900, or thereafter, the city of New York improved the said Marion avenue by cutting, grading, and macadamizing the same; in some portions of the street filling in, and in others, as in front of the plaintiff's property, cutting away to the extent of six to eight feet. which are the acts complained of by the plaintiff as resulting in damage to him. In April of 1900, certain taxpayers, residents of Marion avenue, petitioned the local board of Richmond county, calling attention to the street's unimproved condition and asking that the same be macadamized. The local board recommended to the board of public improvement that proceedings be initiated to macadamize said avenue. Later the municipal assembly of the city by ordinance authorized the macadamizing of Marion avenue under the direction of the commissioner of highways. In accordance with these proceedings, taken pursuant to the city charter then in force, the department of highways macadamized the said Marion avenue, filling and grading as above stated. The street or highway in front of—or, more correctly speaking, in the rear of—plaintiff's property, having been cut away to the extent of six or eight feet, has he sustained any damage, and can he recover therefor?

It is conceded that the principle laid down in Radcliffe v. Mayor, 4 N. Y. 198, 53 Am. Dec. 357, is still the law, and that abutting owners cannot recover for any damage sustained by the lowering or raising of the street grade, unless some legislative enactment provides therefor. Whatever easements they may have in, over, or above the street are not considered as taken, to their legal damage, by the change of grade. This principle is recognized by the Story Case, 90 N. Y. 122, 156, 43 Am. Rep. 146, and Muhlker v. Harlem R. R. Co., 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872. Unless, therefore, some statute gives the plaintiff the right to recover damages, he has no claim against the municipality for the lawful change of grade of Marion avenue, which implies that, if the grade has been changed unlawfully, an action will lie such as this to recover the consequential damages. Folmsbee v. City of Amsterdam, 142 N. Y. 118, 36 N. E. 821; Fuller v. City of Mt. Vernon, 171 N. Y. 247, 63 N. E. 964.

When the plaintiff purchased his property, Laws 1883, p. 100, c. 113, subsequently embodied in the village law as section 159 of the general village law (chapter 414, p. 420, Laws 1897), was in force and effect, by which for any change in grade of Marion avenue, if it were a village street, the damages to the abutting property could be recovered in the way therein provided. Whether or not Marion avenue was a graded village street at the time of merger into the greater city depended upon no specific requirements of statute; for, as stated in the Folmsbee Case, supra, the grade of a street may become establish-

ed by user, acquiescence, and recognition without any formal ordinance on the part of the municipality. The long-continued use of Marion avenue as a street under the village government; the number of dwelling houses erected facing upon it, and in conformity, apparently, with the surface grade, as was seen by me in my personal view and inspection of the street in company with and at the request of both counsel herein, the place itself giving a better, if not different, idea of conditions than can be gathered from the testimony and exhibits without such sight knowledge; the acquiescence of the village officials in the improvements in the street made by adjoining owners; together with the references by the village authorities on maps and in proceedings to Marion avenue as a public street—lead me to the conclusion that Marion avenue was a public village street, graded with the existing surface.

Protected, therefore, from change in grade, whether village or county road, without compensation for damage done abutting owners, by the village law, and also the county law (chapter 555, p. 979, Laws 1890, as amended by chapter 610, p. 1396, Laws 1903), could the city of New York do that which could not be done by village, town, or county, simply because all of this territory had been absorbed by the greater city. I think that, if section 951 of the New York City Charter (Laws 1897, p. 337, c. 378) is alone applicable, and to be read strictly as there worded, no recovery by the plaintiff may be had. It states that:

"After the taking effect of this act [January 1, 1898] there shall be no liability to owners for originally establishing grade nor any liability for changing grades once established by lawful authority except where the owner of abutting property has, subsequently to such establishment of grade, built upon or otherwise improved the property in conformity to such established grade and such grade is changed after such building or improvements have been made. * * * The grade shall be deemed established by lawful authority within the meaning of this section where it was originally adopted by the action of the public authorities or where the street or avenue has been used by the public as of right for twenty years and been improved by the public authorities at the expense of the public or the abutting owners. All laws inconsistent herewith are hereby repealed."

The changes in Marion avenue were made in 1900. The grade of the avenue was not originally adopted by action of the public authorities; nor was the avenue used by the public for 20 years and improved by the public authorities, at the expense of the public or at the expense of the abutting owners. There is evidence of user for 20 years, but no evidence of this required public expense improvement. If, therefore, this section alone is applicable as worded, the change was the making of an original grade, and the plaintiff cannot recover. Stenson v. City of Mt. Vernon, 104 App. Div. 17, 93 N. Y. Supp. 309; Farrington v. City of Mt. Vernon, 166 N. Y. 223, 59 N. E. 826. To this result I have been logically forced, but am not satisfied with this strict and narrow construction of the statutes, and do not believe it was ever intended to be the law for this condition and situation.

While it may be that the village law, giving to an abutting owner damages upon change of grade in the street, may be repealed, there being no vested rights under such law (Smith v. Village of White

Plains, 67 Hun, 81, 22 N. Y. Supp. 450), yet such was not the inten-tion of the charter of 1897; and, in passing, I may say such attempted repeal might be unconstitutional, if in reliance upon such village law, protecting from change, an abutting owner had built a house in ac-cordance with the existing grade (Muhlker v. Harlem R. R. Co., 197 U. S. 544, 570, 25 Sup. Ct. 522, 49 L. Ed. 872). It was not contemplat-ed that residents of villages and towns coming into the greater city were to be worse off by the direct effect of the statute making the change than they were under the old system of government; but it was urged and supposed that they would be at least as fully protected. Section 1614, c. 378, p. 557, of the Charter of 1897, gives this assurance when it provides that "no right or remedy of any character shall be lost or impaired or affected by reason of this act," etc., and it is rea-sonable and just to include in this saving clause the rights given by the village and county laws and law of 1883 as amended, even if such were not rights which the Constitution protected.   Section 951 of the Charter did not, therefore, repeal the law of 1883 and amendments, or the village law, or the amended county law, so as to take away the plaintiff's right to damages under the conditions herein created.

But, even under section 951, may it not be that the plaintiff can re-cover?  Defendant's counsel insists that, to constitute an established grade, not only must user for 20 years be shown, but also improvements by the public authorities.   Is it not possible that the word "and," con-necting these two clauses of the section, should be construed "or," so that they shall read:

"Where the street or avenue has been used by the public as of right for 20 years, or been improved by the public authorities at the expense of the public or of the abutting owners."

Suppose the case of a street in a village, the grade of which had not been originally adopted by the action of the public authorities, but the surface grade had been used for 18 years continuously and repaired or graveled or shelled or otherwise improved by the village authorities at public expense, and suppose that within the 18 years an abutting owner had erected a house at much expense in conformity with the surface grade, and that thereafter this village under the laws of 1897 had become a part of the city of New York, which city proceeded to cut this village street to the damage of the property owner; would he be deprived of all remedy by section 951?  The grade had not been adopted by public authority; neither had the street been used for 20 years "and" been improved at public expense.   Yet it is evident that the charter provisions were not intended to work such injustice, and that the little word "and" should be "or," making it an established grade if used 20 years or the avenue improved at public expense at the existing grade.   See Folmsbee v. City of Amsterdam, supra. Section 951 of the charter can then be harmonized with section 435 thereof, which provides that the surface grades of streets continuously existing and used for 20 years shall be deemed the grades of those streets.

For the reasons above given, and this action being the plaintiff's only remedy, I shall find for him, and assess his damage at $750.