CHARLES H. FARRINGTON, Appellant, *v.* THE CITY OF MOUNT VERNON, Respondent.

1. CITY OF MOUNT VERNON — WHEN ASSESSMENT DISTRICT COVERS BOTH SIDES OF AN AVENUE. An assessment district described in a resolution of the common council of the city of Mount Vernon as embracing land on " North Fourth Avenue, from the north side of Primrose Avenue to the northerly city line," includes the property north of Primrose avenue abutting on the west side of North avenue, although Primrose avenue does not cross it but ends at its east line.

2. ALTERATION OF GRADE AS A MERE INCIDENT TO IMPROVEMENT OF AVENUE NO GROUND FOR VACATION OF ASSESSMENT. An assessment for a street improvement will not be vacated on the ground that the proceeding which resulted in the assessment was one to change the grade of a street, and that the provisions of the city charter in such case were not complied with, where the improved avenue was a public highway without established grade, and the leveling of its surface to a proper grade was a mere incident to the construction and improvement of the street.

*Farrington* v. *City of Mount Vernon,* 51 App. Div. 250, affirmed.

(Argued February 1, 1901; decided March 12, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 5, 1900, reversing a judgment in favor of plaintiff entered upon the report of a referee, and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Milo J. White* for appellant. The property of the plaintiff described in the complaint and assessed by the defendant and its assessors, is not in the assessment district laid out by the common council of the city of Mount Vernon to pay the cost of this improvement. (L. 1892, ch. 182, § 183.) The change of the grade of the highway known as North Fourth avenue, between the northerly side of Primrose avenue and the northerly city line was a material change of grade, being from two to nine and four-tenths feet, and having been done and performed in a proceeding to macadamize, and not in compliance with the provisions of the charter of the defendant, the changing of the grade was without authority, and the assessment,

30

therefore, is void.   (*Matter of Greer*, 39 App. Div. 22 ; *Matter
of Bartlett* v. *Vil. of Tarrytown*, 52 Hun, 380 ; *Folmsbee* v.
*City of Amsterdam*, 142 N. Y. 118 ; *Matter of McCall* v.
*Vil. of Saratoga Springs*, 29 N. Y. S. R. 699 ; *Niver*
v. *Vil. of Bath-on-the-Hudson*, 27 Misc. Rep. 605.)   The
alteration of the grade of North Fourth avenue was without
authority, a material change thereof having been effected by
the work performed.   (*O'Reilley* v. *City of Kingston*, 114
N. Y. 439.)

*William J. Marshall* for respondent.   In using the words
" from the north side of Primrose avenue " the common council
intended to fix the southerly boundary line of the district of
assessment, and not to limit the district to the east side of Fourth
avenue.   (*People ex rel.* v. *Butler*, 147 N. Y. 167 ; *People
ex rel.* v. *McClave*, 99 N. Y. 89 ; *People ex rel.* v. *Lohnas*, 54
Hun, 606 ; *Bell* v. *Mayor, etc.*, 105 N. Y. 144 ; *People ex rel.*
v. *Spicer*, 99 N. Y. 233 ; *Browning* v. *Collis*, 21 Misc. Rep.
157.)   The work done by the defendant city upon North
Fourth avenue was a regulating, re-regulating, grading and
macadamizing and not a change of grade.   (*Koch* v. *Mayor,
etc.*, 152 N. Y. 75 ; *People ex rel.* v. *Mayor, etc.*, 4 N. Y. 419 ;
*Robert* v. *Bd. Suprs.*, 3 App. Div. 367 ; *People ex rel.* v.
*Mang*, 89 Hun, 139 ; *O'Reilley* v. *City of Kingston*, 114
N. Y. 445 ; *Matter of Whitmore* v. *Vil. of Tarrytown*,
137 N. Y. 409.)

MARTIN, J.   The purpose of this action was to vacate an
assessment for the improvement of North Fourth avenue in
the city of Mount Vernon.   It was based upon the theory,
1. That the plaintiff's assessment was upon property not
within the assessment district prescribed and established by a
resolution of the defendant's common council ; and, 2. That
the proceeding which resulted in the plaintiff's assessment was
a proceeding to change the grade of a street, and the pro-
visions of the defendant's charter relating to such a proceed-
ing were not complied with.

The validity of the first claim depends upon the meaning

and effect of certain resolutions defining the extent of the proposed improvement and the district of assessment beyond which no assessment could extend. In those resolutions the improvement and assessment districts were described as on "North Fourth Avenue from the north side of Primrose Avenue to the northerly city line." The learned referee, before whom this action was tried, was of the opinion that as Primrose avenue did not extend across North Fourth avenue, the assessment district thus described did not include the abutting property on the west side of North Fourth avenue, but only such as abutted that street on the easterly side. He accordingly held that the plaintiff's property was not within the assessment district as thus described and that the assessment was consequently void.

That question was fully discussed by the learned Appellate Division, which reached the conclusion that the plain intent and purpose of the resolutions was to indicate the points where the improvement and assessment district should commence and end ; that the reference to Primrose avenue was simply to fix the southern limit. and that it was not the purpose or effect of the resolutions to confine the assessment district to property on the easterly side of the street. We fully concur in that conclusion.

To attribute to the city any other purpose, or to give to the language employed any other interpretation, would be too narrow and technical, if not too absurd to be sustained. When these resolutions and the proceedings of the common council are considered, they plainly indicate that the southern boundary of the improvement on North Fourth avenue and of the assessment district was intended to commence at a point on that street where Primrose avenue intersected it, and end at the northerly city line, and were intended to include all the lots upon that street on the westerly as well as the easterly side. If there was any ambiguity or uncertainty as to the meaning of the language, it should be so interpreted as to carry into effect the purpose of the resolutions, to be determined upon. a consideration of all the words employed, in

the light of the facts and circumstances surrounding or accompanying their adoption. When thus considered, it is obvious that the intent and effect of the resolutions were to include in the assessment district the property on both sides of North Fourth avenue between the north side of Primrose avenue and the northerly city line.

This leads to the consideration of the question whether the proceedings which resulted in the assessment complained of were to change the grade of North Fourth avenue within the meaning and intent of section one hundred and eighty-seven of the defendant's charter. We think they were not. The provisions of the defendant's charter relating to the construction, regulation and grading of its streets, and in relation to the change or alteration of street grades, so far as applicable, may be thus summarized :

Section one hundred and eighty confers upon the city the power to establish the grade, construct, make, grade, regulate and repair the streets, highways, sidewalks, bridges, sewers and aqueducts within its limits, or to cause them to be constructed, graded or repaired. Section one hundred and eighty-one relates only to sewers. Section one hundred and eighty-two provides that the city may contract for the regulating, grading, paving or graveling of its streets or highways, and assess upon the several lots of land benefited thereby two-thirds of the expense thereof in proportion to the benefit that shall arise from such improvement. Then follows the procedure to be adopted in contracting for the work, and in making and reviewing the assessment therefor. It further provides that whenever the common council shall determine to regulate, grade, regrade or pave any street or highway, or any part thereof, it may direct a curb to be set and gutters to be made, and that the expense therefor shall be assessed with the expenses of regulating, grading or paving in the same assessment upon the lots which shall front upon such street or highway. (§ 186.) These sections confer upon the city express power to establish the grade, construct, make, grade, regulate and repair its streets, or to cause it to be done.

When we refer to section one hundred and eighty-seven, upon which the appellant relies to support his second contention, we find that it provides for the alteration of street grades, and declares that the city shall have power, on the written petition of any party interested, to alter in the manner pointed out the grade of any street or highway, or any part thereof. Then it provides the practice to be adopted, and declares that if the owner of any building or other structure shall file a claim for damages to such building or structure arising from such alteration, the damages may be estimated by commissioners to be appointed as therein stated, and that they may be awarded provided the building or structure shall have been built with reference, or to conform to a previously established grade. Manifestly, that section has no application to this case, where the defendant has constructed or repaired one of its streets in pursuance of the power conferred by sections one hundred and eighty and one hundred and eighty-two of that act. The change that was made in the grade of North Fourth avenue was to level its surface only so far as was necessary to enable the city to properly construct the street. There was no proof that any grade had been previously established. On the contrary, the evidence was that North Fourth avenue was a mere public highway, and that to properly construct or repair it, it was necessary to level and grade it to the extent and in the manner it was proved to have been done. That was the only change as to the grade which was made and falls far short of such an alteration or change as was intended by section one hundred and eighty-seven. The obvious purpose of that section was to permit the alteration or change of the general grade of a street which had been previously established, where buildings or other structures had been erected with reference to such grade. In other words, the chief object of that section was to authorize the change of an established grade, and to provide a method of indemnity to persons whose buildings or structures were injured by such general alteration or change. But it has no application where, as a mere incident

of an improvement or construction of a street, the leveling of its surface or bringing it to a proper grade is required.

We are of the opinion that the proceedings in this case were regular, that there was no such change or alteration of the grade of North Fourth avenue as to bring it within the provisions of section one hundred and eighty-seven, and that the improvement under the previous sections of the defendant's charter was fully authorized.

The order should be affirmed, and judgment absolute ordered for defendant, on the stipulation, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, BARTLETT, VANN and CULLEN, JJ., concur.

Ordered accordingly.